1 | John Burton, State Bar No. 86029
jb@johnburtonlaw.com
2 | THE LAW OFFICES OF JOHN BURTON
128 North Fair Oaks Avenue
3 | Pasadena, California 91103
Tel: (626) 449-8300
4 |
5 | Thomas C. Seabaugh, State Bar No. 272458
tseabaugh@seabaughfirm.com
6 | THE LAW OFFICE OF THOMAS C. SEABAUGH
333 South Grand Avenue, 42nd Floor
7 | Los Angeles, California 90071
Tel: (213) 225-5850
8 | Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JONAS HEMMER, individually and as successor in interest to JOHN L. HEMMER, Deceased; JH, by and through her guardian ad litem Julie Hemmer; LINDA HEMMER and DENNIS HEMMER, individually,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF RIVERSIDE, Sheriff CHAD BIANCO, Correctional Sergeant ASHLEY RODRIGUEZ, Correctional Deputies JONATHAN McKEITHEN, CODY BRAND, JAMES PARKS and LAURA VALDEZ; and DOES 1-10,<br><br>Defendants. | Case No. 5:22-CV-1247<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. 42 U.S.C. § 1983 – Survival and Wrongful Death<br><br>2. 42 U.S.C. § 1983 – Deprivation Of Familial Relationship;<br><br>3. 42 U.S.C. § 1983 – Entity and Supervisory Liability;<br><br>4. Cal. Civ. Code § 52.1;<br><br>5. Negligence and Breach of Mandatory Duties<br><br>**DEMAND FOR JURY TRIAL** |

# INTRODUCTION

1. On July 21, 2021, Decedent John L. Hemmer ("Decedent"), a pretrial detainee in the custody of the Riverside County Sheriff's Department (RCSD) at John Benoit Detention Center in Indio, California, was beaten to death by his cellmate, Luke Hanchette. As of the time of filing of this complaint, Hanchette is being prosecuted for John Hemmer's murder, and the facts available to Plaintiffs are limited. The following allegations are based primarily on Hanchette's preliminary hearing.

# JURISDICTION AND VENUE

2. Plaintiffs are the children and parents of Decedent. They bring this 42 U.S.C. § 1983 civil action seeking damages for deprivations of constitutional rights secured by the Fourteenth Amendment of the United States. Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343. The state-law claims are so related to the § 1983 claims that they form part of the same case and controversy and are therefore within the Court's supplemental jurisdiction under 28 U.S.C. § 1367.

3. Venue is proper in this Court under 28 U.S.C. § 1391(b) because all incidents, events, and occurrences giving rise to this action occurred in the City of Indio, County of Riverside, State of California, and within the Eastern Division of the Central District of California.

# PARTIES

4. Plaintiff Jonas Hemmer is Decedent's son. He is an adult qualified to bring suit. He brings this action individually and as his father's successor in interest under California Code of Civil Procedure § 377.32.

5. Plaintiff JH is Decedent's daughter. She is an adult who is severely developmentally disabled and as a result cannot bring suit on her own behalf. She therefore appears through her mother and proposed guardian ad litem, Julie Hemmer, Decedent's ex-spouse. JH brings this action individually.

6. Linda and Dennis Hemmer are Decedent's parents. They bring this action individually.

7. Defendant County of Riverside (County) is a California general law county operating as a local government entity and not an arm of the State of California for Eleventh Amendment purposes. The County operates and manages the RCSD, and together the County and the RCSD operate the Riverside County jail system, which includes the John Benoit Detention Center in Indio.

8. Defendant Chad Bianco is the County Sheriff. As such he is the supervisor, chief decisionmaker and ultimate policy maker for the RCSD. Plaintiffs sue Sheriff Bianco in his individual capacity.

9. Defendant Ashley Rodriguez is a correctional sergeant assigned to the John Benoit Detention Center, and was the direct supervisor of defendant correctional deputies Jonathan McKeithen, Cody Brand, James Parks and Laura Valdez during relevant times. Collectively these five named defendants are referred to as the individual defendants.

10. The true names of Defendants Does 1-10 are unknown to Plaintiffs, who therefore sues these defendants by fictitious names. Plaintiffs will seek leave to amend this complaint to show the true names and capacities of these defendants when they have been ascertained. Each fictitiously-named defendant is responsible in some manner for the conduct and liabilities alleged herein.

11. At all relevant times, the individual defendants and Does 1-10 were agents or employees of the County, the RCSD, or the John Benoit Detention Center. To the extent they were independent contractors, the County and RCSD are responsible for their actions under principles of non-delegable duties. At all relevant times, the individual and Doe defendants acted under color of state law and within the course and scope of their employment. All individual and Doe defendants engaged in, integrally participated in, and failed to intervene to prevent the conduct

of which Plaintiffs complain, and engaged in other wrongful acts or omissions as alleged below.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

12. Plaintiffs timely presented their claim for damages pursuant to Section 910 of the California Government Code on January 14, 2022. The Claim was denied on January 20, 2022. This lawsuit is timely brought within six months of the rejection of that claim.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

13. John Hemmer had been a pretrial detainee in RSO custody since February 2019. Over a period of almost two-and-a-half years, he was housed with various cellmates without any issues while patiently waiting for the criminal charges against him to be resolved.

14. Doe defendants responsible for housing inmates at the John Benoit Detention Center in Indio, California, assigned Hanchette as Decedent's cellmate, deliberately indifferent to the unreasonable risk of severe harm Hanchette posed to Decedent. Hanchette had two convictions for battery, including one with a great bodily injury enhancement, and was in custody on a new charge of battery causing great bodily injury. Hanchette was well known by jail staff prior to the murder for his violence and unpredictability. He could not safely be housed with other inmates. He has been housed in administrative segregation since murdering John Hemmer.

15. The staff at John Benoit Detention Center knew that Hanchette posed unreasonable risks to other inmates. Correctional Deputies Jonathan McKeithen, Cody Brand, James Parks were assigned to 1 West, the housing unit in which Decedent and Hanchette were housed. Knowing of the extraordinary risks that Hanchette posed, McKeithen, Brand and Parks were constitutionally obligated to exercise due vigilance to protect Decedent from harm.

16. Decedent was last seen alive on the evening of July 20, in the 1 West Pod C Dayroom. After lights out that evening he was locked in Cell 44, on the lower tier, with Hanchette.

17. Because of the deliberate indifference of Correctional Deputies McKeithen, Brand and Parks, including their failure to conduct timely and adequate cell checks as required by state law and regulations, Hanchette was able to bully and assault Decedent in his cell, forcing him to strip naked and taking his mattress, among other things.

18. Shortly after 4:00 a.m. on July 21, 2021, under the supervision of Defendant Correctional Deputies McKeithen, Brand and Parks, who in turn were supervised by a Sergeant Doe, the 16 Pod C inmates on the lower tier were allowed out of their cells to get their bagged breakfasts and bring them back to their cell. Only Hanchette emerged from Cell 44, and he took two breakfasts. Defendant Correctional Deputies McKeithen, Brand and Parks were deliberately indifferent to the clear warning of danger to Decedent when he did not come out of his cell to get his breakfast. None checked Cell 44 to see why Decedent did not leave his cell. Moreover, Defendant Correctional Deputies McKeithen, Brand and Parks allowed Hanchette to get a metal crutch from another inmate in another cell although Hanchette had no medical condition that required use of a crutch. The only purpose of the crutch for Hanchette was to use as a weapon to assault Decedent. Defendant Correctional Deputies McKeithen, Brand and Parks were deliberately indifferent to Decedent's welfare when they allowed Hanchette to take the crutch into Cell 44.

19. Following breakfast, there were at least two required cell checks before Defendant Correctional Deputies McKeithen, Brand and Parks went off duty at 6:00 a.m. During this time, Sgt. Rodriguez came on duty and became the direct supervisor of the correctional deputies assigned to 1 West. These checks either did not take place at all or were grossly inadequate and deliberately indifferent to

Decedent's health and safety, as this was most likely the time period during which Hanchette beat Mr. Hemmer to death with the crutch.

20. After the shift change, at around 6:40 a.m., Defendant Correctional Deputy Laura Valdez let Hanchette out of Cell 44 for a court appearance. He walked out carrying the crutch, not using it to walk, apparently with soap or shampoo Gel smeared on it to clean off the blood and human tissue. The cell was flooded with water. Still no one checked the cell. Defendant Valdez falsely reported that the 6:40 a.m. cell check occurred. Had there been a check, Mr. Hemmer would have been found an hour sooner and, on information and belief, would have survived the assault.

21. Defendant Correctional Deputy Valdez discovered Mr. Hemmer, naked, beaten to death, on the Cell 44 floor during a routine safety check at about 7:45 a.m. He was subsequently pronounced dead in Dayroom C.

22. At least two of the three surveillance cameras for Dayroom C were not functioning properly due to the deliberate indifference of all defendants.

23. As to the supervisory defendants, Sheriff Chad Bianco and Correctional Sergeant Ashley Rodriguez, both directed their subordinates in the acts and failures to act that deprived Decedent and Plaintiffs of their Fourteenth-Amendment rights. Both set in motion a series of acts by their subordinates, or knowingly refused to terminate a series of acts by their subordinates, that they knew or reasonably should have known would cause the subordinates to deprive Decedent and Plaintiffs of these rights.

24. The supervisory defendants, Sheriff Chad Bianco and Correctional Sergeant Ashley Rodriguez, knew that their subordinates were engaging in these acts and knew or reasonably should have known that the subordinates' conduct would deprive Decedent and Plaintiffs of these rights; and the supervisory defendants failed to act to prevent their subordinates from engaging in such conduct.

25. The conduct of the supervisory defendants, Sheriff Chad Bianco and Correctional Sergeant Ashley Rodriguez, was so closely related to the deprivation of Decedent's and Plaintiffs' rights as to be the moving force that caused the ultimate injury.

## DAMAGES

26. As a direct and proximate result of each Defendant's acts and/or omissions as set forth above, Plaintiffs individually sustained the following injuries and damages, past and future, among others, funeral and burial expenses; loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support, and all other wrongful death damages; and Plaintiffs' own anguish, pain, suffering, grief, sense of loss, and other forms of severe emotional distress, arising from the fact and manner of their loved one's death.

27. As the Decedent's successors-in-interest, Plaintiffs Jonas Hemmer and JH are entitled to recover damages for Mr. Hemmer's damages that survive his death, including his loss of enjoyment of life, pre-death pain and suffering and punitive damages.

28. Plaintiffs allege claims for punitive damages and penalties allowable under 42 U.S.C. § 1983 and other state and federal law against the individual and Doe Defendants only.

## FIRST CLAIM FOR RELIEF

### Fourteenth Amendment—42 U.S.C. § 1983

(by Jonas Hemmer and JH against the individual and Doe defendants)

29. The foregoing allegations are incorporated as if re-alleged herein.

30. John Hemmer had a Fourteenth-Amendment right to be protected from harm by other inmates. *Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc). The individual and Doe defendants, acting under the color of state

law in their individual and personal capacities, deprived John Hemmer, a pretrial detainee, of the rights, privileges, and immunities secured by the Fourteenth Amendment to the United States Constitution by failing to protect him from violence at the hands of his cell mate, and by subjecting him to a substantial risk of serious harm to which Defendants were both objectively and subjectively deliberately indifferent. The individual and Doe Defendants were objectively deliberately indifferent to the substantial risk of serious harm that Hanchette, especially once he armed himself with a metal crutch, posed to Decedent, who died as a result. Upon information and belief, each of the individual and Doe defendants integrally participated or failed to intervene in the complained-of conduct of the others.

31. Despite knowledge of the substantial risk of severe harm Hanchette posed to Decedent, especially after arming himself with a metal crutch, the individual and Doe defendants did not take reasonable available measures to protect John Hemmer, even though reasonable officers in the circumstances would have appreciated the high degree of risk involved—making the consequences of the Defendants' conduct obvious.

32. The individual and Doe defendants subjected Decedent to their wrongful conduct, depriving Plaintiffs and Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for the rights and safety of Plaintiffs and Decedent.

33. As a direct and proximate result of Defendants' acts and omissions as set forth above, John Hemmer was murdered in his cell and Plaintiffs sustained injuries and damages as set forth above.

## SECOND CLAIM FOR RELIEF

### Fourteenth Amendment—Interference with Familial Relationship

### (42 U.S.C. § 1983)

(by all Plaintiffs against Individual and Doe Defendants)

34. The foregoing allegations are incorporated as if re-alleged herein.

35. Plaintiffs have rights under the Fourteenth Amendment to their parent/child relationships with John Hemmer that were infringed by his death.

36. The acts of the individual and Doe defendants deprived Plaintiffs of their particular rights under the United States Constitution in a manner that constituted deliberate indifference to the substantial danger of serious harm to John Hemmer from his cellmate Hanchette. As a result, John Hemmer lost his life.

37. The conduct of the individual and Doe defendants was malicious, oppressive and in reckless disregard of Plaintiffs' rights, entitling Plaintiffs to punitive damages.

38. Upon information and belief, each of the individual and Doe defendants integrally participated in or failed to intervene in the complained-of conduct of the others.

39. As a direct and proximate result of Defendants' acts and omissions as set forth above, John Hemmer was murdered in his cell and Plaintiffs sustained injuries and damages as set forth above.

## THIRD CLAIM FOR RELIEF

42 U.S.C. § 1983 – Entity and Supervisory Liability

(All Plaintiffs against Defendants County, RCSD and Bianco)

40. The foregoing allegations are incorporated as if re-alleged herein.

41. Plaintiffs are informed and believe, and on that basis allege, that the County and RCSD, and their decision makers, including but not limited to Sheriff Chad Bianco, with deliberate indifference, gross negligence, and reckless disregard to the safety, security, and constitutional and statutory rights of Decedent and all

persons similarly situated, maintained, enforced, tolerated, permitted, acquiesced in, and applied policies, practices, customs and usages of, among other things, each of the following:

    a.   Allowing jailors to not perform the adequate and timely safety checks required by Title 15 of the California Code of Regulations.

    b.   Failing to adequately train, supervise and control employees in the proper classification and supervision of inmates to protect against inmate on inmate violence required by Title 15 of the California Code of Regulations.

    c.   Failing to adequately train, supervise and control employees to protect against signs of bullying and assaultive behavior by inmates.

    d.   Failing to adequately train, supervise and control employees that they should not allow inmates to take potential weapons such as metal crutches into cells.

    e.   Failing to maintain surveillance cameras in jails, including the surveillance cameras in Dayroom C.

    f.   Failing to adequately investigate and, when appropriate, discipline or retrain correctional deputies and supervisors involved in misconduct.

    g.   Condoning and encouraging correctional deputies supervisors in the belief that they can violate the rights of persons such as Decedent and Plaintiffs with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits.

    h.   Failing to analyze critical incidents such as this one and take appropriate corrective action to prevent recurrences.

The foregoing list is illustrative and not exhaustive.

    42.   Defendants County, RCSD and Bianco, acting in his individual capacity, promulgated, tolerated and applied, the policies, practices and usages

alleged above, among others, which were a moving force that deprived Decedent of rights, privileges, and immunities secured by the Fourteenth-Amendment right to secure from inmate-on-inmate violence, as alleged above.

43. Defendant Bianco disregarded the known or obvious consequence that the training deficiencies and omissions would cause his subordinates to violate Decedent and Plaintiffs' constitutional rights; and that deficiency or omission actually caused his subordinates to deprive Decedent and Plaintiffs of their constitutional rights.

44. As a result of the policies, customs, practices and decisions, and training deficiencies alleged above, Decedent and Plaintiffs suffered damages as alleged above.

## FOURTH CAUSE OF ACTION

(Cal. Civil Code § 52.1 - Bane Act)

(Plaintiffs Jonas Hemmer and JH Against All Defendants)

45. The foregoing allegations are incorporated as if re-alleged herein.

46. By their acts, omissions, customs, and policies, Defendants, acting in concert, as described above, and with threat, intimidation, and coercion, violated Plaintiffs' and Decedent's rights under Cal. Civil Code § 52.1 and the following clearly established rights under the laws and constitutions of the United States and California:

   a. Decedent's right to protection and to be free from unsafe conditions of confinement, as secured by the Fourteenth Amendment to the United States Constitution and the California Constitution, Article 1, Sections 17 and 24;

   b. Plaintiffs' right to be free from wrongful government interference with familial relationships and Plaintiffs' right to companionship, society, and support with the Decedent, as secured by the Fourteenth Amendment and state constitutional provisions and laws;

-11-

    c.    The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, Section 1; and

    d.    The right to protection from bodily restraint, harm, or personal insult, as secured by California Civil Code § 43.

47. Defendants had the specific intent to violate John Hemmer's rights, and they violated his rights through their own intentional and volitional conduct, and with deliberate indifference to the rights and safety of Decedent. Their deliberate indifference, in and of itself constitutes threat, intimidation, or coercion under the Bane Act as interpreted by courts, and their willful conduct with knowledge that the deprivations of Decedent's rights would occur, or with reckless disregard for those consequences establishes the requisite specific intent for a Bane Act violation.

48. To the extent this claim is based on a violation of Decedent's rights, it is asserted as a survival claim. To the extent that the violations of rights were done to Plaintiffs, it is asserted by them individually and as a wrongful death claim. To the extent the violations were done to both Decedent and Plaintiffs, it is asserted as an individual claim, survival and wrongful death.

49. As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of Plaintiffs' and Decedent's rights under the United States and California Constitutions and law, Plaintiffs sustained injuries and damages, and against each Defendant named in this Count, and are entitled to damages as set forth above, and punitive damages against all individual Defendants, but not the County or RCSD, including all damages and penalties allowed by California Civil Code §§ 52 and 52.1 and California law, three times actual damages, and attorneys' fees.

**FIFTH CLAIM FOR RELIEF**

**Negligence and Breach of Mandatory Duty**

(Plaintiffs Jonas Hemmer and JH against All Defendants)

50. The foregoing allegations are incorporated as if re-alleged herein.

51. The individual defendants and Does 1-10 had a duty to conform their conduct to that of reasonably careful and prudent corrections officers, as such duties relate to the prevention and mitigation of harm to detainees.

52. In committing the above-described acts and omissions, the conduct of the individual defendants and Does 1-10 fell below that of reasonably careful and prudent corrections officers.

53. The agents and employees of Defendants County and RCSD violated mandatory duties imposed on them by Title 15 of the California Code of Regulations, which provides minimum standards for local detention facilities such as the John Benoit Detention Center. These minimum standards that were violated include those governing classification of inmates to protect inmates from violent, predatory inmates such as Hanchette, and standards requiring meaningful hourly safety checks.

54. As a result of the negligence of the individual and Doe defendants, and the breach of mandatory duties, as alleged above, John l. Hemmer was brutally murdered by his cellmate.

55. The conduct of the individual defendants and Does 1-10, and each of them, and the breach of mandatory duties, were substantial factors in causing harm to Plaintiff.

56. The County is vicariously liable for the wrongful acts of the individual and Doe defendants pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of their employment if the employee's act would subject him or her to liability.

57. Plaintiffs Jonas Hemmer and JH seek survival and wrongful death damages, compensatory damages, punitive damages, and attorney fees under this claim, which they bring individually and as successors-in-interest to John Hemmer.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for relief and requests entry of judgment in his favor and against all defendants as follows:

A. All general damages, including survival and wrongful death damages, in amounts according to proof;

B. Special damages in amounts according to proof;

C. Exemplary and punitive damages against the individual and Doe defendants in amounts according to proof;

D. Costs of suit;

E. Attorney fees under 42 U.S.C. § 1988 and applicable state law provisions; and

F. Such other relief as may be warranted or as is just and proper.

DATED: July 17, 2022              LAW OFFICE OF THOMAS C. SEABAUGH

By  /s Thomas C. Seabaugh
    Thomas C. Seabaugh
    Attorneys for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

DATED: July 17, 2022

LAW OFFICE OF THOMAS C. SEABAUGH

By: *s/ Thomas C. Seabaugh*
Thomas C. Seabaugh
Attorneys for Plaintiffs